MICHAEL CROTTA, JR., ET AL. *v.*
HOME DEPOT, INC., ET AL.
(SC 15948)

Callahan, C. J., and Borden, Berdon, Norcott, Palmer, McDonald and Ment, Js.

Argued January 12—officially released July 20, 1999

*Matthew E. Frechette,* with whom were *Roger J. Frechette* and *Franz P. Frechette,* for the appellants (plaintiffs).

*Mark K. Ostrowski,* with whom, on the brief, was *Jason M. Price,* for the appellee (named defendant).

*Thomas H. Winslow,* with whom, on the brief, were *Frederick L. Murolo* and *Karen T. Gerber,* for the appellee (defendant Tote-Cart Company).

*Opinion*

CALLAHAN, C. J. The principal questions in this case, which comes to us upon our grant of certification[1] from the United States District Court for the District of Connecticut (District Court); *Crotta* v. *Home Depot, Inc.,* Docket No. 3:95CV958 (PCD) (D. Conn. March 31, 1998); are whether, in the circumstances presented, the doctrine of parental immunity operates to preclude the parent of a minor plaintiff from being joined as a third party defendant for purposes of: (1) apportionment of liability; (2) contribution; or (3) indemnification based on the parent's allegedly negligent supervision of the minor plaintiff. We conclude that it does.

---

[1] General Statutes § 51-199a (b) provides in relevant part: "The Supreme Court may answer questions of law certified to it by . . . a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state." Practice Book § 82-1 contains a substantially similar provision.

The record certified by the District Court provides the following facts. On May 22, 1993, while shopping at a store owned by the named defendant, Home Depot, Inc. (Home Depot), in Orange, Michael Crotta, Sr. (Crotta), placed his son, the plaintiff Michael Crotta, Jr. (plaintiff), a minor, in the cargo portion of a shopping cart that was provided by Home Depot for use by its customers.[2] The shopping cart was manufactured by the defendant Tote-Cart Company (Tote-Cart). Crotta then guided the shopping cart to the store's hardware department, where he crouched down to examine an item of merchandise. While Crotta was examining the item, the plaintiff fell from the shopping cart and struck his head on the concrete floor, thereby sustaining serious physical injuries. Thereafter, the plaintiff, acting through his mother, Brenda Crotta, brought an action against the defendants in the Superior Court. In his complaint, the plaintiff asserted, inter alia, a product liability claim[3] against both defendants on the theory that his injuries had been caused by the defective and unreasonably dangerous condition of the shopping cart. The plaintiff also asserted a common-law negligence claim against Home Depot. Upon the motion of Tote-Cart, the case subsequently was removed to the District Court.

Thereafter, Tote-Cart moved to implead[4] Crotta for purposes of apportionment of liability pursuant to General Statutes § 52-572h (c),[5] and for purposes of

---

[2] Crotta placed the plaintiff's younger brother, Louis Crotta, in the "child seat" portion of the shopping cart.

[3] See General Statutes §§ 52-240a, 52-240b, 52-572m through 52-572q and 52-577a.

[4] See rule 14 of the Federal Rules of Civil Procedure. Compare General Statutes § 52-102a (governing impleader of third party by defendant in Connecticut courts).

[5] General Statutes § 52-572h (c) provides in relevant part: "[I]f the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ."

asserting a common-law claim for indemnification against him on the basis of his allegedly negligent supervision of the plaintiff. Home Depot moved for, inter alia, joinder[6] of Crotta as a defendant for purposes of apportionment of liability on the basis of his allegedly negligent supervision of the plaintiff.

Both defendants subsequently filed third party complaints against Crotta, alleging that the plaintiff's injuries had been caused by Crotta's negligent supervision of the plaintiff. In their third party complaints, both defendants asserted claims against Crotta for apportionment of liability pursuant to § 52-572h (c), and common-law claims for indemnification. Tote-Cart subsequently amended its third party complaint to include a common-law claim against Crotta for contribution.

The District Court, acknowledging that this court has never considered whether the doctrine of parental immunity operates to bar a defendant from asserting third party claims for apportionment of liability, contribution or indemnification against the parent of a minor plaintiff on the basis of that parent's negligent supervision of the child, certified the following questions to us: "(1) In an action based on [General Statutes] § 52-572m and common law negligence, may the parent of a minor plaintiff be joined as a third-party defendant for the purpose of indemnification based on negligent supervision?"; "(2) In an action based on [General Statutes] § 52-572m and common law negligence, may the parent of a minor plaintiff be joined as a third-party defendant for the purpose of apportioning liability pursuant to [General Statutes] §§ 52-102 and 52-572h (c) based on negligent supervision?"; "(3) Does [General

---

[6] See rule 19 of the Federal Rules of Civil Procedure and local rule 9 (a). Compare General Statutes § 52-102 (governing joinder of persons in Connecticut courts).

Statutes] § 52-584 apply to joinder of a party for purposes of indemnification, apportionment or contribution?"; "(4) If active negligence and/or active violations of [General Statutes] § 52-572m et seq. are alleged, is a defendant automatically precluded from stating a claim for indemnification under *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, [207 A.2d 732] (1965)?"; and "(5) In an action based on [General Statutes] § 52-572m and common law negligence may the parent of a minor plaintiff be joined as a third-party defendant for purposes of contribution based on negligent supervision?" We agreed to answer those questions.

Our analysis begins with the doctrine of parental immunity. This doctrine bars an unemancipated child from suing his or her parents for personal injuries. *Ascuitto* v. *Farricielli*, 244 Conn. 692, 697, 711 A.2d 708 (1998); *Squeglia* v. *Squeglia*, 234 Conn. 259, 264–65, 661 A.2d 1007 (1995); *Dubay* v. *Irish*, 207 Conn. 518, 523, 542 A.2d 711 (1988). "Under this doctrine a parent is not liable civilly to his child for personal injury inflicted during [the child's] minority . . . . *Mesite* v. *Kirchenstein*, 109 Conn. 77, 82–83, 145 A. 753 (1929)." (Internal quotation marks omitted.) *Dubay* v. *Irish*, supra, 523.

The parties do not dispute that the parental immunity doctrine shields Crotta from liability to the plaintiff for his allegedly negligent supervision of the plaintiff. The defendants nevertheless maintain that the doctrine of parental immunity does not operate to bar them from asserting against Crotta, on the basis of his allegedly negligent supervision of the plaintiff, claims for apportionment of liability pursuant to § 52-572h (c), common-law contribution and common-law indemnification.

I

For purposes of clarity, we depart from the order of questions certified to us from the District Court and

begin with the second certified question, which addresses the defendants' statutory claim for apportionment of liability.

Section 52-572h, which governs the apportionment of liability among multiple tortfeasors, provides in relevant part: "(c) . . . [I]f the damages are determined to be proximately caused by the negligence of more than one party, *each party against whom recovery is allowed* shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ." (Emphasis added.) Thus, the language of § 52-572h (c) explicitly provides for apportionment of liability only among those parties from whom the *plaintiff* is entitled to recover damages. It is undisputed that, in the present case, the doctrine of parental immunity precludes the plaintiff from recovering damages from Crotta. Consequently, § 52-572h does not provide a basis for the defendants to assert a claim against Crotta for apportionment of liability in connection with his allegedly negligent supervision of the plaintiff.

## II

We turn our attention now to the fifth question certified, which addresses the defendants' common-law claims for contribution.[7] "Contribution is 'a payment made by each, or by any, of several having a *common interest or liability* of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others.' " *Fidelity & Casualty Ins. Co. v. Sears, Roebuck & Co.*, 124 Conn. 227, 231, 199 A. 93 (1938); 18 Am. Jur. 2d, Contribution § 1 (1985). "The

[7] Tote-Cart amended its third party complaint to add a claim for contribution. Home Depot's third party complaint sets forth claims for apportionment of liability and indemnification, but does not set forth a claim for contribution. Nevertheless, Home Depot briefed the issue of contribution, apparently in support of Tote-Cart's claim for contribution.

right of action for contribution, which is equitable in origin, arises when, as between multiple parties *jointly bound* to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of the *common* obligation. *Kaplan* v. *Merberg Wrecking Corporation*, [supra, 152 Conn. 412]; *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.*, [supra, 231–32]; *Azzolina* v. *Sons of Italy*, 119 Conn. 681, 692, 179 A. 201 (1935); *Waters* v. *Waters*, 110 Conn. 342, 345, 148 A. 326 (1930); *Bulkeley* v. *House*, 62 Conn. 459, 467, 26 A. 352 (1893)." (Emphasis added.) *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.*, 217 Conn. 340, 353, 586 A.2d 567 (1991).

"As a general proposition, [however] a tortfeasor compelled to discharge a liability for a tort cannot recover contribution from a joint tortfeasor whose participation therein gave the injured person no cause of action against him, since the element of *common liability of both tortfeasors to the injured person, essential to the right of contribution, is lacking in such cases. . . .*" (Emphasis added.) 25 A.L.R.4th 1123, Joint Tortfeasor Contribution—Family §§ 2 [a] (1983); 18 Am. Jur. 2d, supra, § 65. "The contribution defendant must be a tortfeasor, and *originally liable to the plaintiff.* If there was never any such liability, as where the contribution defendant has the defense of family immunity . . . then there is no liability for contribution." (Emphasis added.) W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 50, pp. 339–40; 18 C.J.S., Contribution § 29 (1990) (recognizing that third party may not recover contribution against parent where child has no cause of action against parent for negligent supervision). Again, it is undisputed that, in the present case, the doctrine of parental immunity bars Crotta from being held liable to the plaintiff. Consequently, the defendants have no basis upon which to assert a common-law claim for

contribution against Crotta on the basis of his allegedly negligent supervision of the plaintiff.[8]

## III

We next consider the first question certified, which pertains to the defendants' common-law claims for indemnification. "In an action for indemnity, as distinguished from an action for contribution, one tortfeasor seeks to impose total liability upon another [tortfeasor]. The doctrines of indemnification and contribution are based on fundamentally different principles. '[I]ndemnity involves a claim for reimbursement in full from one on whom a *primary liability* is claimed to rest, while contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by

---

[8] Accord *Sears, Roebuck & Co.* v. *Huang*, 652 A.2d 568 (Del. 1995) (parental immunity precludes third party claim for contribution against parents based on negligent supervision); *Strahorn* v. *Sears, Roebuck & Co.*, 50 Del. 50, 123 A.2d 107 (1956) (same); *Jacobsen* v. *Schroder*, 117 Idaho 442, 788 P.2d 843 (1990) (parental immunity bars suit by child against parent for negligent supervision and also bars third party tortfeasors from seeking contribution); *Paige* v. *Bing Construction Co.*, 61 Mich. App. 480, 233 N.W.2d 46 (1975) (no contribution because parental authority exception to parental immunity doctrine barred defendant's third party complaint against father for negligent supervision); *Kelchner* v. *John Deere Co.*, 149 App. Div. 2d 911, 911–12, 540 N.Y.S.2d 390, appeal dismissed in part and appeal denied, 74 N.Y.2d 890, 547 N.E.2d 100, 547 N.Y.S.2d 845 (1989) ("[s]ince a child has no cause of action against a parent for negligent supervision, joint tort-feasors are not entitled to contribution from parents for liability resulting in part from negligent supervision"); *Holodook* v. *Spencer*, 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974) (same); *Lee* v. *Mowett Sales Co.*, 316 N.C. 489, 342 S.E.2d 882 (1986) (parental immunity bars suit by child against parent and also third party complaint against parent for contribution based on negligent supervision); *Shoemake* v. *Fogel, Ltd.*, 826 S.W.2d 933 (Tex. 1992) (parental immunity precludes claim against parent for acts of parental supervision); *Baughn* v. *Honda Motor Co.*, 105 Wash. 2d 118, 712 P.2d 293 (1986) (parental immunity bars third party action for contribution against parents for negligent supervision); see also *Brunner* v. *Hutchinson Division Lear-Siegler, Inc.*, 770 F. Sup. 517 (D.S.D. 1991) (interpreting South Dakota law to preclude third party contribution claim against parent because parent cannot be held liable to child).

others.' . . ." (Citations omitted; emphasis added.) *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 697–98 n.3, 694 A.2d 788 (1997). " 'Ordinarily there is no right of indemnity or contribution between joint tortfeasors. . . . Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury. . . . Under the circumstances described, we have distinguished between "active or primary negligence," and "passive or secondary negligence." . . . Indemnity *shifts the impact of liability* from passive joint tortfeasors to active ones.' . . . *Kyrtatas* v. *Stop & Shop, Inc.*, 205 Conn. 694, 697–98, 535 A.2d 357 (1988); *Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 74, 579 A.2d 26 (1990); *Kaplan* v. *Merberg Wrecking Corp.*, [supra, 152 Conn. 412–16]." (Emphasis added.) *Skuzinski* v. *Bouchard Fuels, Inc.*, supra, 697. Thus, the common-law doctrine of indemnification permits a tortfeasor to assert a claim *only* against another *liable* tortfeasor. "As in the case of contribution, indemnity is not allowed against one who has a defense, such as family immunity against the original plaintiff." W. Prosser & W. Keeton, supra, § 51, pp. 343–44 n.26.[9] Because it is undisputed that the doctrine of parental immunity bars the plaintiff from asserting a claim against Crotta based on his allegedly negligent supervision of the plaintiff, the defendants have no basis upon which to assert a common-law claim for indemnification against Crotta.

[9] Accord *Baughn* v. *Honda Motor Co.*, 105 Wash. 2d 118, 712 P.2d 293 (1986) (parental immunity precludes third party action for indemnification against parents for negligent supervision); *Foldi* v. *Jeffries*, 93 N.J. 533, 461 A.2d 1145 (1983) (same).

## IV

Finally, there are sound policy reasons for us to conclude that the doctrine of parental immunity operates to preclude third party actions against the parent of a minor plaintiff on the basis of the parent's allegedly negligent supervision of the child. "The primary focus of the parental immunity doctrine in Connecticut is the protection of the relationship between the parent and the child. The protection of that relationship enables the parent to raise the child effectively without undue interference from the state. See *Mesite* v. *Kirchenstein*, supra, 109 Conn. 84 (recognizing that reciprocal obligations of parent and child are 'essentials of the family relationship'); *Dubay* v. *Irish*, supra, 207 Conn. 527–28 (decrying unnecessary court interference in child rearing)." *Ascuitto* v. *Farricielli*, supra, 244 Conn. 701. It is for those reasons that the parental immunity doctrine affords special protection to acts of parental control, authority and discretion. Id., 706; *Dubay* v. *Irish*, supra, 527. "The supervision, care and instruction of one's child involves issues of parental control, authority and discretion that are uniquely matters of a very personal type. . . . Each parent has unique and inimitable methods and attitudes on how children should be supervised. Likewise, each child requires individualized guidance depending on intuitive concerns which only a parent can understand. Also, different cultural, educational and financial conditions affect the manner in which different parents supervise their children. Allowing a cause of action for negligent supervision would enable others, ignorant of a case's peculiar familial distinctions and bereft of any standards, to second-guess a parent's management of family affairs . . . ." (Citations omitted; internal quotation marks omitted.) *Dubay* v. *Irish*, supra, 527. "Courts should not unnecessarily involve themselves in the day-to-day exercise of parental discretion regarding the upbringing and care

of children. To do so would undermine parental authority in the very personal endeavor of child rearing and inject the machinery of the state into an area where its presence might be the occasion for family discord." Id., 527–28. Third party actions against a parent based on that parent's allegedly negligent supervision of his child would be no less disruptive of parental management of family affairs than would be a direct negligence action by the child against the parent. See id., 527. Permitting such actions would "undermine parental authority"; id., 527–28; in a similar manner.

Moreover, the defendants' third party actions seek recovery against Crotta on the basis of his initial liability to the plaintiff. The parental immunity doctrine, however, precludes Crotta from being liable to the plaintiff. Thus, allowing the defendants' third party claims against Crotta in these circumstances would permit the defendants to accomplish indirectly that which could not be accomplished directly.

Furthermore, allowing such third party claims would have a detrimental effect upon the injured child. "It is artificial to separate the parent and child as economic entities by the assertion that the recovery of the nonparent defendant from the negligent parent does not technically diminish the injured child's recovery. The reality of the family is that, except in cases of great wealth, it is a single economic unit and recovery by a third party against the parent ultimately diminishes the value of the child's recovery." *Holodook* v. *Spencer*, 36 N.Y.2d 35, 47, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974). In addition, vulnerability to suit by third parties might make parents reluctant to seek legal redress for their child's injuries. See id.

We conclude, therefore, that the doctrine of parental immunity operates to preclude the parent of a minor

plaintiff from being joined as a third party defendant for purposes of apportionment of liability, contribution or indemnification based on the parent's allegedly negligent supervision of the minor plaintiff. Because the defendants' third party complaints against Crotta fail to state a substantive claim upon which relief can be granted, it is not necessary for us to address the remaining certified questions.

No costs will be taxed in this court to any party.

In this opinion BORDEN, NORCOTT, PALMER and MENT, Js., concurred, and MCDONALD, J., concurred as to parts I, II and III.

MCDONALD, J., concurring. I join parts I, II and III of the majority opinion because of the established law of apportionment, contribution and indemnity, and I concur in the result.

BERDON, J., dissenting. For reasons that I have already set forth at length in previous dissenting opinions, I believe that we should abandon the doctrine of parental immunity. See *Ascuitto* v. *Farricielli*, 244 Conn. 692, 719, 711 A.2d 708 (1998); *Squeglia* v. *Squeglia*, 234 Conn. 259, 278, 661 A.2d 1007 (1995). Unfortunately, the majority of this court refuses to relinquish its stubborn adherence to this anachronism.